UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOE BALTAS,                                     :
      Plaintiff,                              :
                                                :
      v.                                      :   Case No. 3:21cv587(MPS)
                                                :
B. FITZGERALD, ET AL.,                          :
      Defendants.                             :

## RULINGS ON MOTION TO DEEM FAUCHER'S RESPONSES ADMITTED [ECF No. 46] MOTION FOR SPOLIATION SANCTIONS [ECF No. 48]

In this action, Plaintiff Joe Baltas asserts claims for damages based on constitutional violations that allegedly arose during his confinement at Corrigan-Radgowski Correctional Center in 2018. Compl., ECF No. 1. Specifically, the Court permitted Plaintiff to proceed on his claims of: Eighth Amendment violations based on isolating conditions and lack of exercise against Lieutenant Fitzgerald and Warden Faucher, harassment due to increased searches and restrictions against Fitzgerald, failure to protect against Warden Faucher, and medical indifference against Nurse Brennan, Fitzgerald, and Faucher; Fourteenth Amendment equal protection violation against Fitzgerald; First Amendment Free Exercise Clause violation against Fitzgerald and Faucher; and First Amendment retaliation. [ECF No. 27].

Pending before the court is (1) Plaintiff's motion to deem former Warden Faucher's responses to Plaintiff's requests for admission as admitted [ECF No. 46], (2) his motion for spoliation sanctions against Faucher and Fitzgerald [ECF No. 48].

For the reasons set forth below, the motions are DENIED.

### A. Motion to Deem Requests Admitted

Federal Rule of Civil Procedure 36 provides that a party may serve a request to admit on "any other party" to the pending action. *See* Fed. R. Civ. P. 36(a)(1). The party to whom the request is

directed must serve a written answer or objection to the request within thirty days or the request for admission will automatically be deemed admitted. *See id.* at 36(a)(2).

On July 6, 2022, Warden Faucher responded to Plaintiff's requests for admission dated June 6, 2022. Specifically, Plaintiff requested admissions concerning his confinement in A-Pod and Restricted Housing Unit; staff training meetings resulting in lockdowns; access to exercise or outdoor recreation; access to smudging and group religious services; his transfer request to a facility with a Sweat Lodge; Corrigan general population conditions; Corrigan's lack of a Native American Sweat Lodge; the employment status of Lieutenant Fitzgerald and Cronin; and Faucher's employment as Corrigan Warden between June through October 2018. [ECF No. 46-1 at 2-6]. Faucher admitted the request regarding his employment as Corrigan Warden, but otherwise responded: "I retired October 1, 2020, and have no access to information to assist in responding and, as a result, can neither admit nor deny this admission." *Id.* Plaintiff sent Defendants an objection to Faucher's responses as non-responsive, evasive and incomplete. *Id.* at 8-9.

On August 15, 2022, Faucher provided revised responses to Plaintiff's request for admissions. *Id.* at 11-22. With respect to Plaintiff's requests about his cell confinement hours, Faucher indicated he had no recollection of the schedule imposed on inmates classified as Chronic Discipline but referred to the Administrative Directive 9.4, entitled Restrictive Status, which "would control the movement of this inmate on Chronic Discipline Status who was confined to the custody of the Commissioner of Department of Correction Institution in 2018." *Id.* at 11-12. With respect to Plaintiff's requests concerning Corrigan staff training meetings resulting in lock downs, access to exercise and outdoor recreation, smudging, group religious services, Corrigan's lack of a Native American Sweat Lodge, and Lieutenant Fitzgerald and Cronin, Faucher stated that he had "no

independent recollection to either admit or deny" but had "no reason to disagree" with Defendant Fitzgerald's responses to the same requests. *Id.* at 12-15. He also indicated that he had "no independent recollection to either admit or deny" and no information to assist him in responding to Plaintiff's request about his transfer request. *Id.* at 15. He admitted he had served as Warden between June and October 2018, and admitted "to the best of his recollection" that "the A-Pod does have an outside reaction area" and that "General Population prisoners at Corrigan CC are given access to outside recreation." *Id.* at 14.

Lieutenant Fitzgerald was served with the same requests and submitted responses on June 30, 2022, admitting all requests with the exception of Plaintiff's requests about his access to smudging and his transfer request. *Id.* at 18-22.

Defendants maintain that former Warden Faucher's responses comply with Rule 36. [ECF No. 55]. Rule 36(a)(4) provides as follows: "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it"; "[a] denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest"; and "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

Warden Faucher's revised responses comply with Rule 36. He explained the basis for his inability to admit or deny a request after investigation and indicated that he had no reason to disagree with Fitzgerald's admissions to the same requests. Accordingly, Defendant Faucher's revised

responses were sufficient for purposes of Rule 36. Plaintiff's motion to deem Defendant Faucher's responses admitted must be denied.

**B. Motion for Spoliation Sanctions**

Plaintiff seeks sanctions for the spoliation of a "dossier" in a three-ring binder (personally observed by Plaintiff) that assertedly contained "unsubstantiated information about Plaintiff's family, their criminal histories, and their involvement with the Diablos Motorcycle Club[;]" and "various memos and instructions to staff to target the Plaintiff, single him out, not allow him to communicate with other inmates, report on any communications with any individual, conduct daily cell searches, not engage with him and make him a target for investigations into any significant incidents that occur." Mot. for Spoliation Sanctions, [ECF No. 48 at 2]; [Pl.'s decl. at ¶¶ 4-8, ECF No. 48-1]. Plaintiff maintains that this dossier contained information about searches of his cell and instructions to prevent him from interacting with other individuals, which, he says, constitutes evidence of his claims of Eighth Amendment and equal protection violations and First Amendment retaliation. *Id.* at 9. Plaintiff requests the Court to remedy the prejudice resulting from the spoliation with a dispositive sanction, adverse inference instruction, monetary sanctions or penalties, or any other appropriate measure. *Id.* at 9-11.

Plaintiff has submitted an exhibit showing that prior to July 25, 2018, he submitted a Freedom of Information Act request for a "memo containing information" about his family and alleged motorcycle club affiliation, which was denied because he was "unable to have this information due to safety and security reasons." [FOIA Request Denial, ECF No. 48-1 at 6]. He has also submitted an email from Warden Faucher from September 27, 2018, stating that a certain incident report needed to be located as "it most certainly will be needed for litigation." [Email chain, ECF No. 59-1 at 5].

4

In requests for production dated March 25, 2022, Plaintiff requested a copy of the "dossier' or file that was created & maintained at Corrigan regarding the Plaintiff, his family history & associations & management instructions." [First Request, ECF No. 48-1]. Defendants objected to the production request as "vague and ambiguous" and stated that "this information can be readily obtained via chain of command request for review of Plaintiff's Master File, maintained by the Department of Correction at Cheshire, where Plaintiff is currently housed." *Id.* at 16-17. Later, Defendant Fitzgerald submitted a supplemental response, explaining:

> The three ring binder was kept at the Officers station in the unit and contained information on all Chronic Discipline offenders housed in the unit, including Plaintiff. The purpose of the binder was for the unit staff to have knowledge of the offender's history to ensure their own safety when interacting with this population. The information specific as to Plaintiff consisted of, to the best of my memory, Plaintiff's inmate overview sheet, shakedown log, phone call log, disciplinary history, classification history and DOC Chronic Discipline Policy. It did not contain any personal information about Plaintiff nor his family. The information contained in the binder is no longer available as it was a temporary book maintained while Plaintiff was in my housing unit and destroyed upon his transfer to another facility.

*Id.* at 21.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).

"A party seeking sanctions for spoliation of evidence must establish the following three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim ... such that a reasonable trier of fact could find that it would support that claim." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted). If the moving party proves each of these

elements, a district court may, at its discretion, give an adverse inference jury instruction insofar as such a sanction would "serve the threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (citation and internal quotation marks omitted). A court has authority to impose sanctions under Rule 37 of the Federal Rules of Civil Procedure if there is a discovery order violation, or in other instances under the Court's inherent power to manage its own affairs. *See Residential Funding,* 306 F.3d at 106–07.[1]

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). Generally, the court should impose the least sanction that provides an adequate remedy. *Grief v. Nassau Cnty.*, No. 15-CV-7240(JS)(AYS), 2022 WL 307154, at *3 (E.D.N.Y. Feb. 2, 2022) (citation omitted). A district court should not impose spoliation sanctions without a showing that the movant has suffered prejudice. *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 353 (S.D.N.Y. 2012) ("a court should never impose spoliation sanctions of any sort unless there has been a showing—inferential or otherwise—that the movant has suffered prejudice."); *see also Sawyer v. Locy*, No. 919CV879MADATB, 2021 WL 4458822, at *2 (N.D.N.Y. Sept. 29, 2021) ("If a party has an obligation to preserve evidence, the

---

[1] "[C]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). To satisfy the clear and convincing evidence standard, there must be "evidence indicating that the thing to be proved is highly probable or reasonably certain." *Dongguk Univ. v. Yale Univ.*, 873 F. Supp. 2d 460, 466 (D. Conn. 2012) (quoting *Ragbir v. Holder,* 389 F. App'x 80, 84–85 (2d Cir. 2010)).

degree of the party's culpability and the amount of prejudice caused by its actions will determine the severity of the sanctions to be imposed" and quoting *GenOn Mid-Atlantic, LLC*).

### 1.    Duty to Preserve the Evidence

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citing *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998) (the obligation arises "most commonly when suit has already been filed [...] but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation")). When the obligation to preserve is triggered, the party must "do more than refrain from intentionally destroying relevant evidence; the litigant must also 'take affirmative steps to prevent inadvertent spoliation.'" *Skyline Steel, LLC v. PilePro, LLC*, 101 F.Supp.3d 394, 408 (S.D.N.Y. 2015) (citing *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010)). When a party has a routine document retention and destruction policy, "it must suspend it[...] and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

Defendants oppose Plaintiff's motion primarily on the grounds that the individual Defendants, who are being sued in their individual capacities, did not have any duty to preserve the destroyed documents. [Defs.' Opp. at 15-16, ECF No. 97]; [Defs.' Opp. at 6-7, ECF No. 57].

Plaintiff argues that Defendants had a duty to preserve the evidence because they should have known that the evidence would be relevant to future litigation as he had filed numerous grievances, he had told them he would file litigation, they had denied his FOIA request, and they had recognized his propensity to litigate incidents of the type for which he sought information. *see* [Pl.'s Compl. at ¶

57, ECF No. 1]; [Pl.'s Mot. for Spoliation Sanctions at 6, ECF No. 48]; [Reply at 2, ECF No. 59]; *see*

[Email Chain, ECF No. 59-1 at 5 (Warden Faucher stating that a certain incident report needed to be

located as "it most certainly will be needed for litigation.").][2]

Defendants claim that they did not have notice of the litigation until they were served by a

marshal between January and February 2022. Defs.' Opp. at 15, ECF No. 97. But federal district

courts have determined that a state correctional department's spoliation may under certain

circumstances be imputed to individual defendants to avoid unfair prejudice to inmate litigants.

*Stanbro v. Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, at *6 (S.D.N.Y. Aug. 27, 2021)

(rejecting argument that "because the Officer Defendants were sued in their individual capacities, it is

improper to impute DOCCS's conduct with respect to discoverable evidence onto them").[3] *Stanbro*

advised that a court may resolve whether to impute the Department of Correction's spoliation to an

individual defendant by considering the purposes of, and factors for, determining a spoliation

sanction. *Id.* at *7 (declining to impute malfeasance by Department of Corrections to individual

officers where record did not indicate absence of video prejudiced Plaintiff's excessive force claim;

citing *GenOn Mid-Atlantic, LLC*).

At this juncture, the Court assumes—for purposes of this ruling only—that Defendants had a

duty to take steps to preserve the dossier.

---

[2] It is not clear from this email chain what information this incident report included but it does suggest that Warden Faucher was aware of Baltas's propensity for filing lawsuits.

[3] In *Stanbro*, the district court observed that otherwise "a state-run correctional facility could wrongly destroy any piece of evidence in its control with near-zero risk of consequence in prisoner suits since DOCCS cannot be sued for damages in Section 1983 cases, nor can it be held vicariously liable for the torts of its employees." *Id.* (internal citation and quotation marks omitted). The *Stanbro* court also cautioned against "endorsing a bright line rule that [a state correctional department's] spoliation of evidence should always be imputed to correctional officers by virtue of the unique relationship between them[, which] would impose an added burden on prison employees" of having to "second-guess their employer's ability to maintain potential evidence for possible litigation." *Id.* (internal citation and quotation marks omitted).

### 2. Culpable State of Mind

If there was a duty, the Court must consider whether the evidence was destroyed due to bad faith, gross negligence, knowledge, or negligence. *Prelvukaj v. Naselli*, 2023 WL 3570659, at *5 (E.D.N.Y. May 18, 2023). And once a duty to preserve evidence has been established, "any destruction of documents is, at a minimum, negligent." *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 379 (D. Conn. 2007).

It is not disputed that the dossier itself was destroyed, although Defendants maintain that portions of the dossier were reproduced and provided to Plaintiff. [Defs.' Opp. at 17-18, ECF No. 97]. Plaintiff maintains that the fact AAG Varunes informed him that he would be able to review his records in his master file means that the records must have been "blatant[ly]"and "maliciously" destroyed sometime after his litigation. [Pl. Mot. for Sanctions, ECF No. 48]. But this fact could also reflect that the AAG was incorrect in assuming that all of the DOC's information concerning Baltas is preserved in the master file. Thus, Plaintiff has not provided any evidence that the dossier was destroyed due to intentional, bad faith, or even grossly negligent conduct. Thus, on this record, the Court determines that the dossier information was at most negligently destroyed.

### 3. Relevance

"In the context of a motion for spoliation sanctions, 'relevance' means that the destroyed evidence would have been favorable to the movant." *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787, at *15 (D. Conn. July 8, 2022) (citation and internal quotation marks omitted). "[W]here a party destroys the only evidence that might vindicate their opponent's claims and thereby assures victory for themselves, the deterrent purposes of the spoliation doctrine may well

be served by an appropriate sanction, even without affirmative proof as to whether the evidence would have been advantageous to the movant." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018). Thus, whether the spoliator affirmatively destroys the data, or passively allows it to be lost, that party may be sanctioned for the spoliation of evidence. *Doe*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787, at \*15 (D. Conn. July 8, 2022).

Plaintiff claims that the dossier is directly relevant to his claims concerning the constitutional violations arising from harassment, cell searches, restrictions, isolation, equal protection deprivations, and retaliation. [Mot. for Sanctions at 8-9, ECF No. 48]. He asserts that the dossier materials included evidence of shakedowns as the shakedown log was destroyed; that it contained instructions to staff not to permit him to interact with others and other information about policies regarding Plaintiff's differential treatment; and that many of his claims "hinge on the dossier" as a proximate cause of the violations and abuses. *Id.*

Defendants recognize that the information in the dossier is relevant to Plaintiff's claims. But they argue that he has received discovery materials, including reproduced documents from the dossier, that mitigate the prejudice to him. [Defs.' Opp. at 21-22, ECF No. 97]. Defendants explain that they provided Plaintiff with (1) a copy of Administrative Directive 9.4, entitled Restrictive Status, effective date 6/16/16, regarding the management of Plaintiff as a Chronic Discipline inmate while he was housed in A-Pod at CRCC in 2018; (2) Plaintiff's fact sheet containing information specific to his incarceration; (3) his disciplinary history and imposition of sanctions; (4) his Inmate Overview Sheet; (5) a redacted copy of the names of other High Security Inmates housed in CRCC during the time he was in A-Pod;[4] (6) a two page letter requesting his High Security Placement (dated

---

[4]It appears that all of the names and information have been redacted. *See* ECF No.57-3 at 53.

December 18, 2014) that referred to his family;[5] (7) a High Security Information Report; and (8) a copy of the relevant Chronic Discipline Status – Provisions and Management Standards. *Id.*; *See* ECF No. 57-2; ECF No. 57-3. Defendants assert they also provided Plaintiff with "copies of all electronic communications authored by Defendants for the time period June 2018 through October 2018 while he was housed at CRCC[,]" including an email authorized by Defendant Fitzgerald, dated June 15, 2018, with management instructions to A-Pod staff and background information relevant to Plaintiff. *See* ECF No. 48-1 at 25.

Plaintiff requests, *inter alia*, severe sanctions of dispositive rulings or an adverse inference. *See Brock v. Logsgon*, No. 19-CV-6082-FPG-MJP, 2022 WL 2948983, at *5 (W.D.N.Y. July 26, 2022) ("adverse inference sanctions are severe sanctions that should be utilized only in cases of egregious conduct or for situations where the loss of the relevant evidence has so prejudiced the moving party that an adverse inference is necessary to restore the moving party to its pre-loss position."). Based on the present record, and in light of the materials from the dossier provided to Plaintiff, the Court cannot conclude that the deterrent or restorative purposes of spoliation sanctions would be served by imposing a severe sanction of an adverse inference or favorable dispositive ruling—or even by imposing any lesser sanctions. Accordingly, the Court will deny this motion without prejudice to refiling after the Court has assessed a fuller record on a motion for summary

---

[5] Defendants attached this letter to their objection filed on October 24, 2022. [ECF No. 57-3 at 54-55]. On July 25, 2023, Plaintiff filed a notice stating that he never received this letter during discovery. [ECF No. 100]. Defendants later submitted a reply indicating that they have provided Plaintiff with this document. [Defs.' Reply, ECF No. 103]. On August 7, Plaintiff filed a response stating that the letter most recently provided differed from another copy of this letter (including only one page) submitted in his other case, *Baltas v. Dones*, 3:22cv38 (MPS); he notes that Defendants have now provided him with both pages of the letter, which also shows the word "Approved" stamped with a signature dated December 22, 2014. [Pl. Response, ECF No. 107]. Plaintiff claims that the differences between the copies of the letters "irrefutab[ly]" show that Defendants' counsel has altered or fabricated evidence. This is speculation. Plaintiff has submitted no evidence that anyone has altered or fabricated evidence.

judgment. Plaintiff may renew his spoliation arguments in any opposition to any motion for summary judgement.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to deem Faucher's responses admitted [**ECF No. 46**] is **DENIED**; and Plaintiff's motion for spoliation sanctions [**ECF No. 48**] is **DENIED** without prejudice.

It is so ordered.

Signed this 14th day of August, 2023, at Hartford, Connecticut.

/s/ Michael P. Shea
Michael P. Shea
United States District Judge